**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**AMANDA JEAN JOHNSON**

v. 2:25-cv-772-KCD-NPM

**COMMISSIONER OF SOCIAL SECURITY**

---

## REPORT AND RECOMMENDATION

Plaintiff Amanda Jean Johnson seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings. (Doc. 11). Johnson filed an opening brief (Doc. 14), the Commissioner responded (Doc. 17), and Johnson replied (Doc. 18). As discussed in this report, the decision of the Commissioner should be affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

twelve months.[1] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

**B. Factual and procedural history**

On September 3, 2021, Johnson applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Tr. 414–460). She asserted an onset date of June 5, 2020, alleging disability due to the following: narcolepsy, "schizoaffective disorder, depressive type," anxiety, depression, centralized anxiety disorder, and hypertension. (Tr. 266, 479, 501). As of the onset date, Johnson was 37 years old and had earned a GED and completed cosmetology school. (Tr. 108,

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.903(a).

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

496, 502). She previously worked as a cashier, retail processor, dental processor, and customer service worker. (Tr. 502–503).

On behalf of the administration, a state agency[4] reviewed and denied Johnson's applications initially on October 4, 2022, and upon reconsideration on January 19, 2024. (Tr. 330–338, 341–347). At Johnson's request, Administrative Law Judge (ALJ) Maria Northington held a hearing during which Johnson was represented by an attorney. (Tr. 121–153). On August 27, 2024, the ALJ issued a decision finding Johnson not disabled. (Tr. 93–110). The administration's Appeals Council denied Johnson's request for review. (Tr. 1–7). She then brought the matter to this court, and the case is ripe for judicial review.

**C. The ALJ's decision**

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove

disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that Johnson had not engaged in substantial gainful activity since June 5, 2020, the alleged onset date. (Tr. 96). At step two, the ALJ characterized Johnson's severe impairments as: "schizoaffective disorder with episodic panic," "Sjogren's syndrome with positive ANA," hypertension, morbid obesity, and "follicular thyroid cancer with thyroid nodules status-post thyroidectomy in 2022 and on daily thyroid medication." *Id.* At step three, the ALJ determined Johnson did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 98).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except secondary to her combined physical impairments, the claimant is limited to light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as lift and/or carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to four hours in an eight-hour workday. In the course of work, she

> should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task nor would it cause her to leave the workstation. She is able to perform occasional postural functions of climbing ramps and stairs, kneeling, and stooping. She is to perform no crawling, no crouching, and no climbing of ladders, ropes, and scaffolds. Secondary to history of asthma, obstructive sleep apnea (OSA), and hypertension, the claimant is to avoid frequent exposure to respiratory irritants such as fumes, odors, smoke, gases, and poor ventilation. The claimant is to avoid frequent exposure to extremes of heat, humidity, and cold temperatures. This avoidance is determined to be no more than Two-thirds of an eight-hour workday. The claimant is to perform **no constant fingering, feeling, grasping, and handling manipulations with the bilateral upper extremities,** however, **frequent fingering, feeling, grasping, and handling manipulations remain intact**. Secondary to her mental impairments, she **retains the capacity to understand, remember, and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work**. In the course of work, she is to have **no in person contact with the public with the exception that incidental and telephonic contact are not precluded**. She is to have **occasional contact with coworkers and supervisors**, occasional being defined as occasional interaction and coordination, **but not necessarily proximity to the same**. (Tr. 101–102) (emphasis added).

Consequently, the ALJ found Johnson had no past relevant work. (Tr. 108, 144). At step five, the ALJ nevertheless found that Johnson could perform other work that exists in significant numbers in the national economy. (Tr. 109). In support, a vocational expert testified that an individual of Johnson's age, education, work experience, and RFC could perform work similar to the following representative occupations:

- *Laundry Folder*, DOT #369.687-018), light, SVP 2, 23,000 jobs;
- *Laundry Sorter*, DOT #361.687-014, light, SVP 2, 22,000 jobs;
- *Final Assembler*, DOT #713.687-018, sedentary, SVP 2, 16,000 jobs;
- *Lens Inserter*, DOT #713.687-026, sedentary, SVP 2, 17,000 jobs;

- *Eyeglass Frame Polisher*, DOT #713.684-038, sedentary, SVP 2, 10,500 jobs.[5]

(Tr. 109). Thus, for purposes of the Act, the ALJ concluded Johnson was not disabled from June 5, 2020, the alleged onset date, through August 27, 2024, the date of the decision. (Tr. 110).

## II. Analysis

Johnson presents two issues on appeal:

1) Whether the ALJ's RFC failed to account for Johnson's moderate limitation in concentrating, persisting, or maintaining pace; and,

2) Whether the ALJ erred by finding Johnson's carpal tunnel syndrome non-severe at step two.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's

[5] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled. The expert's job numbers were for the national economy.

decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B. Johnson has not demonstrated that the ALJ failed to account for her moderate limitation in concentrating, persisting, or maintaining pace.**

At step two of the sequential analysis, an ALJ rates the severity of a claimant's mental impairment by evaluating its impact across four domains of mental

functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3); SSR 96-8p, 1996 SSR LEXIS 5, *10, 1996 WL 374184, *4 (July 2, 1996). For each domain, the ALJ assesses the limiting effects using a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 404.1520a(c)(4). "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part 4, Section 12.00(F)(2).

Because a moderate limitation is, by definition, not a serious one, it may not limit an individual's ability to perform work-related functions. If that is the case, the ALJ need only explain as much at step four. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). As the ALJ acknowledged below, the RFC evaluation "requires a more detailed assessment." (Tr. 101). Otherwise, the ALJ must account for the moderate mental-function limitation when formulating the RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). This can be done by limiting the claimant to simple, routine,

unskilled work when there is medical evidence indicating that the claimant can perform such work despite the moderate mental-function limitation. *See Winschel*, 631 F.3d at 1180.

Here, the ALJ found that Johnson had a moderate limitation in concentrating, persisting, or maintaining pace. "This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." SSA POMS DI 34001.030(G)(3)(b)(iii). Examples that illustrate the nature of this area of mental functioning include ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; and working close to or with others without interrupting or distracting them. *See id*. Correspondingly, the ALJ crafted an RFC limiting Johnson to not only simple and routine tasks, but also to simple instructions and a near-solitary work environment. Johnson's appeal ignores these other facets of the RFC and pretends as if the RFC merely limited her to unskilled work. On that basis alone, it should be rejected.

Indeed, for the same reason, the holdings on which Johnson heavily relies are inapposite. For example, in *Cruz* the RFC limited the claimant to "no high stress work, defined as no fast-paced production quotas," and jobs that would not "typically require conflict with others." *See Cruz v. Kijakazi*, No. 8:22-cv-1502-AEP, 2023 WL 5217189, *9 (M.D. Fla. Aug. 15, 2023). In *Winschel*, the RFC limited the claimant to unskilled ***or semi-skilled***, light work with an at-will sit/stand

option. *See Winschel v. Comm'r of Soc. Sec.*, No. 6:08–cv–1750–Orl–DAB, 2009 WL 4885019, *1 (M.D. Fla. Dec. 14, 2009). Neither of these RFCs included the various limitations that the ALJ incorporated here, which limited both distractions and the chance that Johnson might inappropriately distract others, and also limited the complexity of the instructions she might receive—all of which are reasonably related to staying on task at a sustained rate. And most notably, the claimants in *Cruz* and *Winschel* were not even limited to unskilled work. Resting on such authorities and grounded in the false construct that only the unskilled-work limitation corresponds with her moderately limited ability to stay on task at a sustained rate, Johnson's arguments fail to carry the day.

Moreover, the ALJ's determination that Johnson could perform a narrowly limited range of unskilled work despite the moderate limitation at issue is supported by substantial evidence. To begin, the ALJ found, and Johnson does not contest, the existence of only one severe mental impairment: schizoaffective disorder with episodic panic. Johnson's mental status examinations during the adjudicatory period were essentially normal—specifically, she had normal thought processes, attention and concentration, cognition, and memory, and no impairment of thought content. (Tr. 1076–1077, 1083–1084, 1097, 1144, 2072, 2203, 2220, 2244, 2336, 2548, 2579, 2609, 2618, 2625, 2632, 2803, 2821, 3303, 3792). Treatment notes reflect that after being diagnosed with schizoaffective disorder and panic disorder in July 2019,

Johnson did not present for treatment for almost two years, until April 2021, despite having Medicaid insurance. (Tr. 1070–1074, 1076–1078). In May 2022, Johnson underwent a psychological evaluation that revealed she had a normal mood and affect, thought process and content, and a cooperative attitude, but her attention and concentration were not within normal limits. (Tr. 4714). In 2023, Johnson reported that her mood was not controlled, she was easily agitated, and her concentration was "all over the place." (Tr. 8323, 8335, 8351, 8367, 8378, 8381). However, numerous examinations showed that her concentration and attention span were within normal limits, as were her immediate, recent, and remote memory, and fund of knowledge. (Tr. 8326–8328, 8338–8340, 8354–8356, 8370–8371). In February 2024, Johnson's chief complaints to her mental health provider were diminished concentration, a "miserable mood," and feeling frightened. (Tr. 8952). Nevertheless, she had a normal appearance; she had no issues naming objects or repeating phrases; her thought content was coherent and goal-directed, with no evidence of abnormal thoughts or cognitive disturbances, and she had a good fund of knowledge. (Tr. 8438, 8955–8956). In June 2024, Johnson's primary care provider noted that she had no psychological symptoms and no fear of failing. Her appearance was normal, as was her affect, and she had no thought content impairment. (Tr. 9017, 9019).

She takes care of her personal needs independently, prepares meals for herself, cleans, launders her clothes, shops for groceries, pays her bills, and manages her bank account. (Tr. 134, 530, 557, 4714). She watches television, reads mail, and is on the internet one to two hours per day (Tr. 135, 4714), all of which can require sustained attention. She cares for her children, ages thirteen and three. (Tr. 131–132). Most notably, she drives three to four times per week without any restrictions or limits, which requires a high degree of concentration and persistence. (Tr. 132, 4714). All told, more than a scintilla of evidence that a reasonable person would find adequate to support the RFC considering the moderate limitation in Johnson's ability to concentrate, persist, or maintain pace. *Cf. Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2014) (restricting the claimant to simple and routine tasks adequately accounted for the moderate limitation related to concentration, persistence, and pace); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) (same); *see also Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) ("Because the evidence showed that Washington could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed Washington's limitations as to concentration, persistence, or pace.").

Still, Johnson claims the ALJ's finding that she "did not complain to treating or examining practitioners of serious difficulty maintaining concentration,

persistence, and pace" is not based on an accurate and "logical bridge" to the record. (Doc. 14 at 13). But her critique is myopic, as a logical bridge simply means that "an ALJ must articulate at some minimum level, her analysis of the evidence." *Chait v. Comm'r of Soc. Sec.*, No. 2:23-cv-400-KCD, 2024 WL 3534098, *8 (M.D. Fla. July 25, 2024) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). The ALJ did so here, noting that Johnson often reported adequate symptom control from psychiatric medications; treating and examining practitioners did not observe that Johnson was overly distractible or slow; she watched television, used the internet for pleasure, regularly drove a vehicle, paid her bills, managed bank accounts, and cared for her two children. (Tr. 100, 131–134, 530, 557, 1066–1089, 1090–1428, 1867–2113, 4711–4715, 8284–8292, 8322–8413, 8414–8488, 8883–8987). Not to mention, Johnson's mental status examinations revealed normal thought process, attention and concentration, cognition, and memory, and no impairment of thought content.

### C. Substantial evidence supports the ALJ's finding that Johnson's bilateral carpal tunnel syndrome is a non-severe impairment.

At step two, the ALJ also found Johnson's bilateral carpal tunnel syndrome (CTS) to be a non-severe impairment, explaining that:

> [T]he claimant's bilateral carpal tunnel syndrome was non-severe as the claimant had **mild findings in the claimant's left hand x-ray showed no erosive findings noted as minimal degenerative changes greater multangular first metacarpal joint** (Ex. C9F/122 and C42F). The claimant alleged **right hand weakness and a diagnosis of carpal tunnel syndrome**

> **in November 2021, but had no significant abnormal findings on examination** (Ex. C20F/24). In addition, the claimant had **5/5 strength in the upper extremities** (Ex. C51F/24). Although the claimant had a brace and bilateral CTS injections in 2022, the claimant had **normal examinations with mild atrophy as an incidental finding** (Ex. C44F and C58F/13 and 14). Her studies showed **no significant median motor or sensory latency changes** (Ex. C58F/12). The claimant's **June 2024 wrist examination showed Phalen's maneuver showed numbness and tingling in the median nerve distribution, positive Tinel's sign, and positive carpal compression test of both wrists** (Ex. C55F/15). However, the claimant had **normal bilateral wrist x-rays and hand x-rays except some left-hand minimal degenerative changes** in the greater multangular first metacarpal joint (Ex. C57F). The claimant repeated a trial of cortisone injections (Ex. C58F/12). Accordingly, the undersigned finds the claimant's CTS was **non-severe as the claimant had no significant ongoing treatment**. Regardless, the undersigned included a manipulative limitation. (Tr. 97, 2534, 8308–8309, 8512, 9018, 9041, 9057) (emphasis added).

Johnson takes issue with the ALJ's finding, arguing that a positive Phalen's maneuver,[6] Tinel's sign,[7] and carpal compression, as well as repeated cortisone injections, are indicative of a severe impairment that would interfere with her ability to work. (Doc. 14 at 15). But, ultimately, Johnson's appeal asks the court to do exactly what it cannot: reweigh the evidence. *See Buckwalter*, 997 F.3d at 1132. Indeed, the ALJ considered Johnson's positive test results. However, the ALJ also considered that Johnson had normal exam and x-ray findings with minimal

---

[6] A Phalen's maneuver is "a maneuver in which the wrist is maintained in volar flexion; paresthesia occurring in the distribution of the median nerve within 60 seconds may indicate carpal tunnel syndrome." *Phalen's Maneuver*, The Free Medical Dictionary, https://medical-dictionary.thefreedictionary.com/Phalen+maneuver (last visited July 2, 2026).

[7] A Tinel's sign is indicative of "a tingling sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb. *Tinel's Sign*, Merriam-Webster Dictionary, https://www.merriam-webster.com/medical/Tinel%27s%20sign (last visited July 2, 2026).

degenerative changes, 5/5 strength in her upper extremities, and had received only cortisone injections. So the ALJ pointed to specific evidence to support her finding that Johnson's CTS was non-severe as she had no significant ongoing treatment. This is sufficient. The best Johnson can offer is evidence that counters the ALJ's finding. But the court declines this invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 822 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

Furthermore, the ALJ considered Johnson's CTS when formulating the RFC and provided specific manipulative limitations of "no constant fingering, feeling, grasping, and handling manipulations with the bilateral upper extremities, however, frequent fingering, feeling, grasping, and handling manipulations remain intact." (Tr. 101–102). Even so, Johnson argues that the ALJ erred as this limitation is not befitting of an individual with severe carpal tunnel syndrome. (Doc. 14 at 17). But whether Johnson's carpel tunnel syndrome is severe or not, the ALJ's RFC manipulative limitations are supported by substantial evidence. *See Harris v. Kijakazi*, No. 20-cv-639-jdp, 2021 WL 3124207, *3 (W.D. Wis. July 23, 2021)

(rejecting plaintiff's claim that "severe carpal tunnel syndrome requires a greater restriction than the ALJ ascribed to her," noting that "ALJs often include frequent handling and fingering limitations in the RFCs of claimants with severe carpal tunnel syndrome"); *see also Wanda C. v. Saul*, No. 3:19-cv-00049, 2021 WL 649801, *7 (W.D. Va. Feb. 19, 2021) (collecting cases finding that a restriction to frequent handling and fingering was supported by substantial evidence when there was only conservative treatment for carpal tunnel syndrome), *report and recommendation adopted*, 2021 WL 890577 (Mar. 9, 2021). Thus, the ALJ did not err.

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

Recommended on August 17, 2026

NICHOLAS P. MIZELL
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions or request an extension of time to do so. A party's failure to timely file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**